Nicholson, C. J.,
delivered the opinion of the Court.
In 1867, Berry H. Brown was walking from the City Hall in Nashville, down North Market Street, on the West side, in the direction of his home, when he stepped into a pile of sand on the sidewalk and sank suddenly down into it. In his effort to save himself, by catching with his other leg, he broke his hip bone in the socket. It was in the night; it was *3 dark, and there was no light or. guard of any kind to warn him that the pile of sand was there, or that there was any danger.
The pile of sand was from one to three feet high; that is, some of it was a foot high and some three feet deep. By the fall, Brown, who was, at the time, sixty-seven years of age, after much suffering became a cripple, being compelled to go on crutches. Before the accident he was a stout, able-bodied man, a carpenter by trade, and dependent on his labor for the support of himself and family. Brown sued the Mayor and City Council, and on the trial in the Circuit Court, at the January Term, 1871, the jury returned a verdict for the plaintiff, and assessed his damages at $9,500. Defendant moved for a new trial, which was overruled, on condition that the plaintiff would remit $2,250, which was done, and judgment rendered for $7,250, from which the defendant has appealed in error.
The error mainly relied on for reversal, is assigned upon the charge of the Circuit Judge, and specially the following portion thereof:
“It is the duty of the corporation to use care and vigilance in the selection of agents, servants and contractors, in making improvements; to retain the requisite degree of control and superintendence over them in the performance of their duty; and to enforce such measures of vigilance and care as will guard against exposure to injuries of any kind.”
This charge was made in view of the fact that a contract was proven to have been made for the repair of the street, of which the following is a copy:
*4 “ Articles of agreement made and concluded this-. 10th of September, 1867, between Jacob Geiger, contractor, and the City of Nashville, by its duly authorized agents, W. Matt Brown, and Geo. S. Kinney, chairman of street committee, whereby it is covenanted, and agreed as follows:
“First. Said Jacob Geiger hereby covenants and agrees to construct stone curbing, guttering, and brick sidewalks, at .such points as the chairman of the-street committee may order, constructing the same in a thorough and workman-like manner, and under the-directions of the City Engineer, and to the satisfaction, of the Street Committee.
“ Second. The City of Nashville, for and in consideration of the faithful execution of the above-mentioned work by said Geiger, hereby covenants and agrees to pay said Jacob Geiger the following prices for the different descriptions of work executed by him,, as' follows,” &c.
Geiger, it appears by the evidence, had employed John King to lay the brick in repairing the sidewalk where Brown was injured. It does not appear whether Geiger or King furnished the sand. King says: “ I left the pavement about an hour by sun, the evening of the accident. A colored man was doing the work for me. He got out of brick that evening. He lacked four or five feet, may be a little more or less, of finishing the sidewalk. I got the brick and had them hauled there that evening, but was not there-when they were unloaded. I put up no guard ropes nor lights; I always told the men to put up guards. *5 It was my habit to put up barriers, but put up none that night. The load of sand was thrown on the edge of the sidewalk 'after witness left the place that evening.”
James Roberts was employed by King in laying pavements. He says: “ There was a space of twenty or thirty feet to lay iii all — about a foot and a half, I suppose, was left that evening not laid. A load of sand was thrown on the sidewalk that evening about quitting time, and was loose, just as thrown from the wagon; and the pile of it was from one to three feet high.” He says, also: “About quitting time, a load of brick came and we unloaded that. I was the last of the hands that was on the street, and when I left, about dark, there was no rope, plank, or other barrier,” &c. He concludes: “ The way we left the sidewalk it was dangerous; there was danger not only of breaking one’s leg, but also his neck.”
It was in view of their evidence, that is, that the Improvement was being made under a contract with Geiger, that the Circuit Judge charged that it was the' duty of the corporation to use care and vigilance in the selection of agents, servants, or contractors, in making the improvements. The objection taken to the charge is, that the Judge instructed, the jury that it was the duty of the corporation to use care and vigilance in selecting contractors to make improvements, :as well as agents and servants.
It is not denied, nor can it be, that a municipal corporation is responsible for injuries arising from the *6 negligence or wrongful acts of its agents or servants: Mayor, &c., of Memphis v. Lasser, 9 Hum., 761. But it is insisted that the same rule does not apply when the corporation resorts to contractors for making improvements, instead of employing its own agents and servants, and this presents the main question in the present case.
It is proper for us to state in this place the result of the decisions in our State, so far as they may be of service in solving the question now before us.
In Humes v. Mayor and Aldermen, 1 Hum., 403, it was held, that a municipal corporation for the government of a town or city, is the . proprietor of the streets, which it holds as easements, in trust, for the-benefit of the corporation, and which it has the power to grade, pave, or otherwise improve. In the case of the Mayor and Aldermen of Memphis v. Lasser, 9 Hum., 760, the court said: “This charter is a special franchise for the private benefit and emolument of the city of Memphis, although the public may no doubt be benefitted by it.” Again: “Municipal corporations, are likewise liable for the wrongful acts and neglects of their servants and agents, upon the same grounds,, in the same manner, and to the same extent, as natural persons: Ang. & Ames, 250; 4 Serg. & Rawl, 6; 3 Hill, 531; 19 Pickering, 513.” The court then-proceeded to add: “ It is the duty of the corporation to exercise proper care and prudence in the selection and employment of suitable agents and servants; to-retain the requisite degree of control and superintendence over them in the performance of their duties;; *7 to enforce such measure of vigilance and care as will guard against all unusual or unreasonable exposure to injuries of any kind; all this they may and ought to stipulate for, and exact from those in their employ, and they will not be permitted to shield themselves from the consequences of their own gross neglect of duty, by turning the injured party around to seek redress from the irresponsible agent or servant.”
Such is the law as laid down by the Court in regard to the duties of a corporation in the selection of its agents and servants, and in regard to the liability of the corporation for the neglect of duty in selecting bad agents and servants.
But the Court then proceeded to state the law in another view. They say again: “ Upon general principles of law, the owner is liable for a nuisance upon his premises, upon the principle that he is bound to use his own property in such manner as not to cause an injury to others.” To sustain this position they refer to the cases of Payne v. Rogers, 2 H. Bl. Rep., 849, and Bush v. Steinman, 1 Bos. & Pull. R., 304, the latter of which is as follows: “The owner of a house who had ordered repairs, was holden liable for the effects of nuisance occasioned by the repairs, though the person who caused the nuisance was the servant of the mason who had been employed by the party who undertook the repairs.”
It can not be controverted, that the charge of the Circuit Judge in the present case is fully sustained by the case of Bush v. Steinman, quoted and approved by this Court, in the case of the Mayor and Aldermen *8 of Memphis v. Lasser. But we are furnished with an elaborate argument, in which the authorities are extensively adduced to show that in England, the case of Bush v. Steinman has been long since overruled, and the doctrine established, that a contractor with a corporation, for making improvements, does not occupy the relation of agent or servant of the corporation, and therefore that the same liability does not attach to a corporation for injuries arising from the neglect or wrongful acts of contractors, as of agents or servants. In the case of Painter v. The City of Pittsburg, it was held: “ That when a person employs another, exercising a distinct employment, to do work by a special contract, for a stipulated sum, and does . not interfere with the mode of performance, he is not responsible for the acts or negligence of the contractor or his employees.” In delivering his opinion, Judge Strong says: “The wrong was not done by any servants of the defendants. There is no room for the application of the principle of respondeat superior. The defendant had no control over the men employed by the contractors,- or over the contractors themselves. They could not dismiss them, or direct their work. The excavation was not illegal, and there was a superior to the workmen, to-wit: the contractor.”
It will be observed that the decision is made to hinge upon the fact, that the,, defendants had no control over the contractors or their employees. But in the case before us, W. Matt Brown, who was Mayor when the improvement was made, proves, that “the city never surrendered its right to supervise the eon- *9 tractor, and control and direct the manner in which he did his work.” The same proof is made by Brant-ley, the city marshal. But it is insisted that this evidence of Brown and Brantly was incompetent, because no such control and superintendence were reserved in the written contract. But we can not assent to this proposition. First, Because in the contract it was provided, that the work was to be done “ under the direction of the City Engineer, and to the satisfaction of the street committee.” But, second, The Mayor and City Council held the streets as trustees for the city, and they had no fight to surrender their trust to the contractors for repairing the sidewalks; therefore, what Brown and Brantly stated, was simply the law of the case, and therefore, was wholly immaterial.
It follows that the material fact in the case of Painter v. Pittsburg, on which the case turned, does not exist in the present cáse, and therefore the authority is not applicable. But Judge Strong proceeds to say: “ Undoubtedly there has been much confusion and some conflict of decision on this subject, growing out of the early case of Bush v. Steinman, 1 Bos. & Bull., 304; but that case has long since ceased to be a correct' enunciation of the law of England.” He then quotes numerous cases to sustain his conclusion, that the case of Bush v. Bteinma.n, is no longer the law in England, and he next proceeds to review the American cases, to show that the preponderance of authorities in this country is against the doctrine of Bush v. Steinman.
*10 The case of Painter v. Pittsburg, was published in the American Law Register before it was printed in the 46 Penn. Reports, and one of the editors of that Review appended to its publication, notes, from which we extract the following: “ So far, therefore, as the principal case, (Painter v. Pittsburgh,) is to be regarded as an enunciation of the limits of the doctrine of respondeat superior, it undoubtedly follows the strong current of modern authorities. But there is another ground, which was apparently not urged in the argument, and is not noticed by the court, on which the correctness of the decision appears to us very questionable. It is undoubtedly the duty of a municipal corporation to keep its streets in a safe condition for public travel, and it is not shown upon what principle of law the city can be allowed to shift this obligation by its own acts. A contract may render the contractor liable over to the city, but the city must still remain responsible to the person injured by neglect of what is properly a portion of its municipal duties.” After citing a number of cases which hold that the corporation is liable as well for the acts and negligence of its contractors as of its agents and servants, the editor concludes: “We can not regard the case under discussion, in its application to municipal corporations, as either satisfactory on principle, or established authority.”
We concur in this criticism upon the doctrine of the case of Painter v. Pittsburg. It ignores the principle settled by this Court in the case of Humes v. *11 Mayor and Aldermen, &c., 1 Hum., 403, that a municipal corporation for the government of a town or city, is the proprietor of the streets, which it holds as easements, in trust, for the benefit of the corporation. To this trust there must attach the duty of exercising proper care in the selection of agents, servants or contractors, for the due execution of the trust. This duty can not be shifted by transferring its own legitimate duties to a contractor, instead of employing its own agents and servants in making improvements or repairs of streets. Nor are we able to appreciate the suggestion that public policy requires that a party injured by the neglect or wrongful acts of a contractor, in making repairs on a street, should be limited to his redress for the wrong, to a suit against the contractor; such contractor can not, in the nature of the relation he bears to the corporation, be anything else than a quasi agent, or servant, of the corporation. The corporation can not divest itself of its duty as trustee, to superintend and control the improvements and repairs ordered to be made, whether' by agents or contractors. To attempt to so divest itself, would be in itself a violation of its duty as trustee. These principles were recognized by ’ this-Court in the case of the Mayor and Aldermen of Memphis v. Lasser, 9 Hum., 760, and we are content to follow them. We are, therefore, of opinion that there is no error in the charge of the court below. The jury have found that the injury was the result of the neglect of duty of the corporation, and have assessed *12 the damages. We can not say that the finding of the jury is contrary to the evidence, either as to the neglect, or the amount of damages.
The judgment is therefore affirmed.